**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Gordon P. Gallagher, United States Magistrate Judge

Civil Action No. 18-cv-02934-CMA-GPG

CAROLYN ANDERSON,

    Plaintiff,

v.

COLORADO MOUNTAIN NEWS MEDIA CO., and,

RANDY WYRICK,

    Defendants.

---

**RECOMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS**

---

This matter comes before the Court on Defendants' motion to dismiss (ECF # 34),[1] Plaintiff's response (ECF# 40), and Defendants' reply (ECF #44). The motion has been referred to this Magistrate Judge for recommendation (ECF #36).[2] The Court has reviewed the pending motion, response, reply, and all attachments. The Court has also considered the entire case file, the applicable law, and is sufficiently advised in the premises. This Magistrate Judge respectfully

---

[1] "(ECF #34)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

1

recommends that the motion be DENIED in substantial part (as to claims one and two) and GRANTED in part (as to claims three and four), as specifically set forth below.

Factual and Procedural Background

Plaintiff sues for defamation asserting that Defendants published a false, malicious, and reckless article in the Vail Daily, regarding her, on November 16, 2017. Plaintiff's first amended complaint and jury demand (ECF #30, p. 1). Specifically, Plaintiff claims that Defendants committed: defamation for statements (count 1 (ECF #30, pp. 19-21)); defamation for republished statements (count 2 (ECF #30, pp. 21-24)); negligent defamation (count 3 (ECF #30, pp. 24-25)); and negligent infliction of emotional distress (count 4 (ECF #30, pp. 25-27)).

Plaintiff asserts that, on November 16, 2017, Defendants used a "boldface, banner headline on the front page, a teaser, a spot reserved for momentous stories, located just under the newspaper's masthead and running the full width of the page to attract attention, as follows: "Vail widow sued for scam." The article (ECF #1-1) (emphasis removed and not in the same size or typeface as in the amended complaint). The "strapline"[3] below read "Securities and Exchange Commission lawsuit claims woman and now-deceased husband defrauded investors of $5.3M. A3". The article (ECF #1-1) (emphasis removed and not in the same size or typeface as in the amended complaint). The page A3 "new boldface banner" headline then read "Vail widow accused

---

[3] strapline. noun [ C ] uk /ˈstræplaɪn/ us  MARKETING. a short, easily remembered phrase used by an organization so that people will recognize it or its products. *https://dictionary.cambridge.org/us/dictionary/english/strapline*.

of securities fraud." The article (ECF #1-1) (emphasis removed and not in the same size or typeface as in the amended complaint). Below that is the statement "Carolyn Anderson sued by SEC and investigated by Vail police for alleged Ponzi scheme." The article (ECF #1-1) (emphasis removed and not in the same size or typeface as in the amended complaint). The byline of the article is by Randy Wyrick—staff writer for the paper. The article (ECF #1-1).

Within the article are additional pertinent statements as follows: "The Securities and Exchange Commission sued Carolyn Anderson in Denver District Federal Court last week, claiming that she and her husband Michael Anderson scammed investors out of more than $5.3 million between March 2014 and his death on Feb. 27, 2017." The article (ECF #1-1). Discussing alleged victim Quinn Sypniewski, the article stated "[b]efore long, he was one of a dozen and a half people who the SEC says the Anderson**s** scammed. The article (ECF #1-1) (**emphasis** mine)). "SEC attorney Leslie Hughes is charging Carolyn Anderson with securities fraud . . ." The article (ECF #1-1).

While not attached to the amended complaint, Plaintiff attached the original article to the original complaint as their Exhibit A. (ECF #1-1). A separate and visually different version was attached to Defendants' motion to dismiss. (ECF #34-2) (The visual differences include not only typeface and arrangement but also a lack—in Defendants' version—of the headline. The differences seem to be because Defendants provided the Court with a version printed off the internet or web version of the paper while the Plaintiff provided a photo copy of the original article and headline. It should be noted that Plaintiff's version also does not appear in exactly original form. The headlines and strapline would not have been in immediate succession. The Court has taken account of the fact that the headline and strapline would have been on one page while the internal headline, as noted, would have been on page A3).

3

Plaintiff repeats specific sections of the complaint in Securities and Exchange Commission (SEC) v. The End of the Rainbow Partners, L.L.C., et. al. (ECF #30, pp. 3-6). The Court takes judicial notice of and incorporates herein, to avoid undue repetition, the entirety of the original complaint in that action, numbered 17-cv-2670-MSK-NYW (ECF #1 therein) (ECF #34-3 in this action), as there can be no dispute as to the contents therein. (Of course, there may be vigorous dispute over the validity of the contents but the Court is not considering the contents of the complaint in 17-cv-2670 for the truth of the matters asserted). A court generally considers only the contents of the Complaint when ruling on a motion to dismiss brought pursuant to Rule 12(b)(6). "Exceptions to this general rule include: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes their authenticity; and 'matters of which a court may take judicial notice.'" *Henson v. Bank of Am.*, 935 F. Supp.2d 1128, 1136 (D. Colo. 2013) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)). "[T]he court is permitted to take judicial notice of its own files and records . . ." *Van Woudenberg ex re. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000) (abrogated on other grounds).

Plaintiff accuses Defendants of the following specific reckless acts:

(a) Defendants recklessly ignored the "gist of the SEC complaint . . ." because "Plaintiff was not sued for securities fraud and was not a participant in the scheme to defraud investors." Plaintiff's amended complaint (ECF #30, p. 3);

(b) Defendants "recklessly ignored the explicit language of the SEC complaint . . ." (ECF #30, p. 3); and

(c)     Defendants "recklessly ignored the explicit language of the Press Release issued by the SEC . . ."  (ECF #30, p. 5).

Plaintiff asserts that she is a private individual and not a public figure.  (ECF #30, p. 7). Plaintiff asserts that she was not the subject of a matter which constituted a matter "of public interest or concern as the investment scheme was perpetrated by Michael Anderson [deceased husband]."  *Id*.

Defendants' Arguments for Dismissal

Defendants move, pursuant to Rule 12(b)(6), for dismissal of this action for failure to state a claim.  Defendants assert that nothing was published regarding Plaintiff which was materially false and define that term as meaning "a factual error that would cause an ordinary and reasonable reader[] to think *significantly* less of [Plaintiff] than if they were informed of the uncontested truth."  Defendants' motion to dismiss (ECF #34, p. 2) (emphasis original).  Defendants argue that the article did not say Plaintiff "had committed securities fraud" only that "she had been accused (by the SEC) of having done so." *Id*. (emphasis removed).  Defendants further argue that Plaintiff "had been accused (by the same investors whose interest the SEC was representing) of having done so."  *Id*. at pp. 2-3 (emphasis removed).

Defendants further argue that Plaintiff's claims are barred under Colorado law for failing to plead and provide proof of special damages.  *Id*. at p. 3.

Defendants spend a significant amount of time reviewing the course of the investigation(s) undertaken on the issue of the securities fraud.  *Id*. at pp. 3-15. Defendants review the Vail Police

Department investigation (ECF #34, pp. 4-6), an investor suit (ECF #34, pp. 6-10), the SEC complaint (ECF #34, pp. 10-140), and reporting by other news outlets (ECF #34, pp. 14-15).

The meat of Defendants' argument is that: (a) the fair report privilege protects Defendants (ECF #34, pp. 19-23); (b) the statements were substantially true as a matter of law (ECF #34, pp. 23-30); (c) the libel claim is barred by the incremental harm doctrine (ECF #34, pp. 30-33); and (d) the negligent infliction and negligent defamation claims fail as a matter of law (ECF #34, pp. 33-34).

Plaintiff's Response

Plaintiff responds, arguing that: (a) the fair report privilege is not applicable (Plaintiff's response (ECF #40, pp. 4-5); the statements published were not substantially true (ECF #40, pp. 8-9); (c) that the incremental harm doctrine is not applicable (ECF #40, pp. 10-11); and (d) that the common law causes of action are proper (ECF #40, pp. 11-13).

Standard of Review

Rule 12(b)(6)

The Court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Dismissal under Rule 12(b)(6) may also be based on the lack of a cognizable legal theory. *See Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, which, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007); *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Although allegations of fact are accepted as true, legal conclusions are not. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. Accordingly, the Court disregards conclusory statements and looks only to whether the remaining factual allegations plausibly suggest the defendant is liable. *Khalik*, 671 F.3d at 1190-91. "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007) (quoting *Bell Atlantic Corp.,* 127 S. Ct. at 1974).

Analysis

Jurisdiction and Defamation

Because this claim arises under diversity jurisdiction, the Court applies Colorado substantive law in determining whether Plaintiff has stated a defamation claim. *See Haberman v. The Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir.2006) ("In diversity cases, the substantive law of the forum state governs the analysis of the underlying claims.") To state a cause of action for defamation under Colorado law, a plaintiff must allege "(1) a defamatory statement concerning another; (2) published to a third party; (3) with fault amounting to at least negligence on the part of the publisher (actual malice in this instance, *see infra*); and (4) either actionability of the statement irrespective of special damages or the existence of special damages to the plaintiff

caused by the publication." *Williams v. Dist. Ct., Second Judicial Dist.*, 866 P.2d 908, 911 n. 4 (Colo.1993).

Private v. Public Concern

A distinction exists in defamation law between matters of public concern and purely private matters. *See Williams v. Continental Airlines, Inc.,* 943 P.2d 10, 17 (Colo.App.1996). When a matter is one of public concern, the First Amendment affords special protections and a heightened burden applies: "[A] plaintiff is required to prove the statement's falsity by clear and convincing evidence." *Id.* Whether a subject is private or public concern is a question of law. *Id.* "Generally— a matter is of public concern whenever 'it embraces an issue about which information is needed or appropriate,' or when 'the public may reasonably be expected to have a legitimate interest in what is being published.' " *Id.*

Here, based on factors listed in the amended complaint (ECF #30, p. 7) Plaintiff asserts that this matter should be considered as purely private in nature. Factors relied upon by Plaintiff to support this assertion include the fact that this was a private investment club, that it was limited to private investors, that the perpetrator (Michael Anderson) is deceased, and that the scheme terminated some nine months prior to publication of the article. *Id.* The Court finds that this matter is a matter of public concern—one in which the public may have a legitimate public interest. The SEC complaint (17-cv-2670 (ECF #1) or (ECF #34-3 in this action)) details a scheme to defraud spanning some three years and netting an alleged $5.3 million from some 18 investors. The perpetrator(s) allegedly created a fictitious charity to funnel funds and ultimately the SEC filed suit. The untimely demise of Mr. Anderson, along with his statement taking responsibility

for the entirety of the scheme—certain to be debated regarding veracity—adds another layer to the story. It is reasonable to believe that the public at large, particularly in the small Vail community, would be interested in this story and would have a legitimate public interest in the ongoing proceedings.

Heightened Burden in a Matter of Public Concern

As this is a matter of public concern, certain constitutional privileges are triggered. *See Smiley's Too, Inc. v. Denver Post Corp.*, 935 P.2d 39, 41 (Colo. App. 1996). A heightened burden exists to prove the publication's falsity by clear and convincing evidence. *Id.* Additionally, the plaintiff must prove that the publication occurred with actual malice, actual knowledge that the statements were false or in reckless disregard of the truth. *New York Times Co. v. Sullivan*, 84 S.Ct. 710, 726 (1964). Colorado has adopted a definition of reckless disregard that there must at least be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. *Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1109-10 (Colo. 1982).

The Headline Rule

Having decided that this is a matter of public interest, the next order of business is to determine the scope of my analysis regarding the article itself, e.g., do I examine merely the headline(s) or the entirety of the publication. Accepting the allegations as true, and reasonably viewing them in light of the headlines and strapline, Defendants stated regarding Plaintiff: "Vail

widow sued for scam"; "Securities and Exchange Commission lawsuit claims woman and now-deceased husband defrauded investors of $5.3M"; and " Vail widow accused of securities fraud." The article (ECF #1-1). Determining whether the headline should be bifurcated for consideration from the article is critical in this action because a reading of merely the headlines and strapline would leave a reader with the clear implication that Plaintiff was being personally sued by the SEC for securities fraud and for defrauding investors of $5.3 million. *See* the article (ECF #1-1).

> The majority of jurisdictions hold that a headline cannot be severed from the body of the article when undertaking defamation analysis; the entire body of the article serves as the context for the headline and must be considered in determining whether a headline has a defamatory meaning. *See Salzano v. N. Jersey Media Grp.,* 201 N.J. 500, 993 A.2d 778, 793 (2010)) ("[T]he headline is not to be considered in a vacuum but must be viewed on the backdrop of the entire report.... Indeed, we presume that the public reads the entire article when we assess its fairness and accuracy.") (citing *Molin v. Trentonian,* 297 N.J.Super. 153, 687 A.2d 1022, 1023–24 (App.Div.1997) ("[T]he majority of jurisdictions support the rule that headlines are to be construed in conjunction with their accompanying articles.")); *see also* Donald M. Zupanec, Libel by Newspaper Headlines, 95 A.L.R.3d 660 (1979) ("[I]t generally has been held that a headline must be construed together with the article to which it refers. In following this rule of construction, it has at times been held that defamatory language in a headline was cured by language in the body of the accompanying article.").

*Hogan v. Winder*, 762 F.3d 1096, 1108 (10th Cir. 2014).

While it does not appear that Colorado has directly addressed this issue, this District has previously applied the majority rule. *See Miles v. Ramsey*, 31 F.Supp. 2d 869, 880 (D. Colo. 1998) (construing the headline in conjunction with the body of the article in a case addressing the JonBenet Ramsey murder). While the way we consume news has changed significantly since the *Miles* matter in 1998, the change is less dramatic than since the *Hogan* matter a mere five years ago. Despite the lack of direction from Colorado Courts, I find that the headline should be construed in conjunction with the entirety of the article in my analysis and I will not bifurcate the headline from the text. In particular, I make this finding as this case deals with a regular old-

fashioned print article, thus I have no need to address how new modalities, e.g., the internet, may change the analysis.

Substantial Truth and the Gist

As the headline cannot be looked at distinct from the body of the article, the article itself (ECF #1-1) now bears discussion. Rather than regurgitate the entirety of the two-page article, I incorporate the article by reference and make it a part of this Recommendation in its entirety. Undoubtedly, the article has inaccuracies, e.g., "SEC attorney Leslie Hughes is charging Carolyn Anderson with securities fraud" and "[t]he Securities and Exchange Commission sued Carolyn Anderson in Denver District Federal Court last week, claiming she and husband Michael Anderson scammed 18 investors out of more than $5.3 million. . ." The article (ECF #1-1). Both exemplar statements are factually incorrect. The SEC did not charge Plaintiff with securities fraud (claims one and two of the complaint). *See* 17cv-2670 (ECF #1, pp. 19-20) or (ECF #34-3 in this action). Rather, as a relief[4] defendant, Plaintiff was subject only to claim three for equitable disgorgement. *Id*. Likewise, regarding the second statement, the SEC never claimed Plaintiff scammed investors. *Id. passim*. So, there are factually incorrect statements in the article.

But, it is substantial truth that is at issue because substantial truth is an absolute defense to a defamation claim. *Gomba v. McLaughlin,* 504 P.2d 337, 338 (1972). Accordingly, even if a statement is defamatory, it is not actionable if it is substantially true. *Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004). Furthermore, "[a] defendant asserting truth as a defense in a libel action is not required to justify every word of the alleged defamatory matter; it is sufficient if the

---

[4] A "relief" or "nominal" defendant is not accused of wrongdoing in a securities enforcement action but instead may have assets subject to possible disgorgement. *See S.E.C. v. Cavanagh*, 155 F.3d 129, 136 (2nd. Cir. 1998).

substance, the gist, the sting, of the matter is true." *Gomba*, 504 P.2d at 339. In determining whether a challenged statement is substantially true, the inquiry should focus on how an average reader would read the statement. *Miles v. Ramsey,* 31 F.Supp.2d 869, 875–76 (D. Colo. 1998). The test is whether the challenged statement produces a different effect upon the reader than that which would be produced by the literal truth of the matter. *Gomba,* 504 P.2d at 339. To be actionable, an allegedly defamatory statement must contain a material falsehood. *See Bustos v. A & E Television Networks,* 646 F.3d 762, 764 (10th Cir. 2011). To qualify as a material falsehood, the challenged statement must be false and "likely to cause reasonable people to think 'significantly less favorably' about the plaintiff" than if they knew the whole truth. *Id*. at 765.

Would the public think substantially less of Plaintiff Carolyn Anderson after reading the article? The answer to this question is undoubtedly yes. The average reader, *see Miles,* 31 F.Supp.2d at 875–76, would have the distinct impression that the **SEC** had concluded that Plaintiff had personally engaged in wrongdoing by "scam[ing] 18 investors" and that the **SEC** was specifically "charging Carolyn Anderson with securities fraud." The article (ECF #1-1) (**emphasis mine**).

I specifically **emphasize** the SEC above because of Defendants' reliance on the investigation in their argument. Defendants, in the 368 pages of attachments to their motion to dismiss (ECF #34), provided significant documentary evidence to the effect that many others may believe that Plaintiff Carolyn Anderson was part and parcel of the scheme to defraud and was essentially in it up to her eyebrows. *See, e.g., Bighorn Wealth v. Estate of Michael Anderson*, *passim*, 17-cv-1568-RBJ (amended complaint (ECF #39)) (found at ECF #34-6 in this action) ("Michel Anderson and Carolyn Anderson engaged in various devices, schemes and artifices to

defraud, as well as acts, practices and courses of business that operated or would operate as a fraud or deceit on the investors in the Wealth Fund.") (para. 87) (sic).

The Securities and Exchange Commission (SEC) is a well-known Federal Government agency. A determination by the SEC to institute an action against a person, to file suit, to accuse someone of "securities fraud" is a serious action which has weight, it has heft. Such an official decision goes beyond a lawsuit by a private party, is goes beyond accusation and innuendo, it goes beyond the fact of a Vail Police Department investigation.

Here, a reader of the Vail Daily story would conclude the article with the distinct impression that the SEC had made an official determination that Plaintiff Carolyn Anderson was a scammer and that the SEC had charged Carolyn Anderson based on that decision. That impression would be left based on the plain language of the article and the overall "gist" of the article. Of course, that impression would be wrong because the SEC made no such determination. The SEC determination was only to proceed against Plaintiff as a relief defendant, to seek disgorgement, and nothing more. For sure, the article gives brief space to Michael Anderson's "confession" wherein he "claimed that he did the electronic money transfers by logging in under Carolyn Anderson's user credentials without her knowledge or consent," further stating that "[h]e [Michael Anderson] told her [Plaintiff] to sign blank checks and forged her [Plaintiff's] signature on account documents, the SEC said." The article (ECF #1-1). It is unknown what weight the SEC gave to this statement, if any. However, a reader, reviewing these statements in the context of the article, as a whole, would be left with the impression that these statements were discarded as unbelievable excuses by the SEC which decided instead to charge securities fraud.

Plaintiff, in her response to the motion to dismiss (ECF #40, p. 8), goes too far the other direction by arguing that "[a] fair and accurate report of the SEC complaint would state,

13

unequivocally, that Carolyn Anderson is not being accused of any wrong doing." That would not be necessary for a fair report as many did so accuse Carolyn Anderson of wrong doing. It the article had stopped there, Plaintiff would not have been able to state a claim. It was the addition of repeated accusations regarding formal proceedings by the SEC that made the report unfair, that changed the gist of the article and made the statements substantially untrue.

I find that the article, by both specific statements as well as the overall gist, contains material falsehoods. The most significant material falsehood is the unmistakable impression a reader would take away from the article that the SEC had charged Plaintiff with securities fraud. A reader of the article would conclude reading with a different impression, a different conclusion from the literal truth as to the key facet of the article—the SEC determination. The reality, for whatever investigative and charging reasons the SEC found to be good and proper, was that the SEC only sought funds from Plaintiff as a relief defendant. A reader of the article would instead believe the SEC had charged Plaintiff with securities fraud. I find that Plaintiff has clearly and convincingly plead falsity and that the statements were not substantially true. Accurate reporting of the full investigation is not at issue here. *See Pierce v. St. Vrain Valley Sch. Dist. RE-1J*, 944 P.2d 646, 651 (Colo. App. 1997). Rather, it is the false information regarding the SEC proceeding on securities fraud that is the issue, not the underlying investigation.

Legal Terminology

Perhaps these misstatements could be chalked up to inaccuracies due to legal terminology. I keep in mind that the subject addresses legal terms and terminology. Courts in other jurisdictions have held that technical errors in legal terminology and reports involving violation of the law are of no legal consequence. *See Simonson v. United Press International, Inc.,* 654 F.2d 478 (7th

14

Cir.1981) (article reporting person charged with rape, when actually charged with second degree sexual assault, not defamatory, because statement was not made false by substituting a word in common usage for an exact legalism); *Read v. Phoenix Newspapers, Inc.,* 819 P.2d 939 (1991) (Ariz.) (newspaper article describing a defendant's conviction for "firing a gun," when he was actually convicted of "exhibiting the gun," was not defamatory, because the inaccurate statement did not cause him any more damage than that which resulted from his actual conviction and sentence). "Actual malice may be found when a publisher had a subjective awareness of probable falsity." *Talley v. Time, Inc.,* 18-6169, p. 31 (10th. Cir. 5/8/2019) (internal citation and quotation marks removed). That could occur if a "publisher knew it was publishing contested allegations but deliberately ignored sources or information that might reveal what actually happened." *Id.* (internal citation and quotation marks removed).

The issue of legal misstatement is important here because of the need for Plaintiff to prove that the publication occurred with actual malice, actual knowledge that the statements were false or in reckless disregard of the truth. *See New York Times Co.,* 84 S.Ct. at 726. If Defendants' error(s) were mere legal misstatements, they could not be in reckless disregard of the facts. Of course, it is not possible to crawl inside the author's head and know what he was thinking when he wrote the Vail Daily article. But, it is possible to read the source material, the complaint from 17-cv-2670 (ECF #1) or (ECF #34-3 in this action), and compare that document, and the interpretation of what a reasonable person might think of the SEC complaint, with the Vail Daily article. In making that comparison, I must decide if the article was in reckless disregard of the source material such that there is sufficient evidence to permit the conclusion that the Defendant in fact entertained serious doubts as to the truth of his publication. *See Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1109-10 (Colo. 1982).

Reckless Disregard

Reckless disregard exists here. The complaint contains a summary section, (17-cv-2670 (ECF #1, pp. 2-3)) or (ECF #34-3 in this action), which outlines the role of the named participants. That summary section clearly outlines the actions of "Mr. Anderson" in committing securities fraud and unequivocally lists Plaintiff as a relief defendant at the very conclusion of the summary section. *See* paras. 1-6 regarding Mr. Anderson and para. 7 regarding Carolyn Anderson. The complaint plainly lists defendants separately from relief defendants—placing Carolyn Anderson squarely in the relief defendant category. *Id*. at pp. 4-6. In the claims for relief section, the complaint delineates which claims apply to which defendants/relief defendants—stating that claim three, equitable disgorgement, applies to the "relief defendants." *Id*. at pp. 19-20. Claims one and two, for securities fraud, are not against Plaintiff. *Id*.

Keeping in mind the concern over dinging the press for technical errors in legal terminology, I find that Plaintiff has sufficiently pled reckless disregard. Plaintiff sufficiently alleges that Defendants went beyond what would be a mere mix-up in legal terminology and sufficiently pled the reckless standard. Defendants admit that the "SEC's Complaint did not *accuse* Plaintiff of having *perpetrated* the securities fraud . . ." Defendants' motion to dismiss (ECF #34, p. 21) (emphasis original). Defendants attempt to put some daylight between this incorrect information and Plaintiff's claims by asserting that the SEC Complaint accused Plaintiff of many other malfeasances. This attempt to distinguish misses the mark in that it is the naked accusation of SEC decision making to charge securities fraud that is the powerful misstatement—pervasively made throughout. The Court distinguishes the exemplar provided by Defendant, *UFCWU Local No. 7 v. Ute City Tea Party, Ltd.*, 2000 WL 1575536 * 5 (Pitkin County District Ct. Colorado 2000) (not reported), as a situation which appeared to be a negligent mistake based

on failing to investigate rather than the reckless and malicious circumstance alleged here and for which sufficient allegations are set forth to get past the Rule 12(b)(6) hurdle.

Here, Plaintiff has shown by the standard necessary to defeat a 12(b)(6) motion to dismiss that Defendants knew that Plaintiff was not charged by the SEC for securities fraud, but printed an article stating incorrect facts and for which the gist of was exactly the opposite—in disagreement with facts Defendants possessed and which were plainly obvious and not so legally complex that Defendants' interpretation was a mere mix-up or mistake. Here, the article published would have a very different effect upon the reader than if the truth had been published. *See Fry v. Lee*, 408 P.3d 843, 849 (Colo. App. 2013). The falsehoods were such that a reasonable person would think "significantly less favorably" about Plaintiff than if they knew the whole truth. *Bustos*, 646 F.3d at 765. Also, the present circumstance goes beyond a situation where a mere portion of readership would think less of Plaintiff. *See Gordon v. Boyles*, 99. P.3d 75, 81 (Colo. App. 2004) (as a matter of law, even if some readers understood the published statements as defamatory, they are not actionable where the plain and ordinary meaning of the articles is substantially true). Here, the plain and ordinary reading of the statements would lead any reader, not just some minority portion, to think the SEC had charged Plaintiff with securities fraud and to think less of her for that.

Incremental Harm Doctrine

Colorado has applied—in a limited fashion—the incremental harm doctrine, which holds that "when unchallenged or nonactionable parts of a particular publication are damaging, another statement, though maliciously false, may not be actionable because it causes no harm beyond the harm caused by the remainder of the publication." *Tonnessen v. Denver Pub. Co.,* 5 P.3d 959, 965

(Colo. App. 2000). "The incremental harm doctrine measures the increase in harm inflicted by the challenged statements beyond the harm imposed by the rest of the publication. If the difference in that harm is determined to be nominal or nonexistent, the statements are dismissed as not actionable." *Id*. (citation and internal quotation marks removed).

While it is not clear that this doctrine applies based on the limited application in *Tonnessen* as opposed to a wholesale adoption of the doctrine, I will briefly address the issue. I find that Plaintiff's pleading of this matter would be sufficient, at this Rule 12(b)(6) stage, to plausibly state a claim for more than nominal or *de minimis* harm if I am measuring that harm as the difference between a fair report and the current article. Outlining an investigation and then telling the public that the SEC had determined to pursue securities fraud against Plaintiff would reasonably be significantly more harmful than outlining the same investigation and then telling the public that Plaintiff was merely a relief defendant—a posture that bespeaks, at the very least, a lack of evidence to charge. If comparing information protected by the fair report privilege with that which exceeds the privilege, I still find Plaintiff to have sufficiently pled more than a nominal harm based on the difference.

Republishing

Defendants make additional argument as to count 2, defamation for republished statements. Defendants' limited argument on that score consists of lumping the analysis regarding claim two together with the analysis as to claim one. *See, e.g.,* Defendants' motion (ECF #34, p. 3) ("Plaintiff's defamation claim**s** are barred by Colorado law . . .") (**emphasis** mine).

As Defendants failed to substantively address the issue, the Court will engage in no further analysis on the topic other than to state that the republishing claim will stand or fall as per claim

one. As I find that Plaintiff sufficiently plead claim one, I similarly find Plaintiff plead claim two, the republishing claim.

Common Law Causes of Action

Plaintiff's third and fourth claims are for negligent defamation and negligent infliction of emotional distress. (ECF #30, pp. 24-26). I have already determined this to be a matter of public concern. *See supra*. Thus, mere negligence is insufficient to support any claim(s) and Plaintiff's third and fourth claims must fail as a matter of law. *See Williams v. Continental Airlines, Inc.*, 942 P.2d 10, 16 (Colo. App. 1996) ("mere negligence cannot supply the malice requirement for a defamation claim").

Plaintiffs, while tacitly admitting the Sisyphean nature of their request ("Counsel understands the nature of our request and, in the even these common law causes of action are dismissed, we respectfully report to the court they were made to preserve these important issues on appeal" (Plaintiff's response (ECF #40, p. 13))), still fight to maintain their third and fourth claims. Citing to Justice Thomas' concurrence in *McKee v. Cosby*, 139 S.Ct. 675, 681-82 (2019) (concurring in the denial of a writ of certiorari yet encouraging a potential re-visitation of the actual-malice rule in terms of the displacing effect on state law defamation claims), Plaintiffs invite this Court to reconsider the topic on the basis that *New York Times Co. v. Sullivan* sets an impossible standard, thus displacing the possibility of proving up a mere negligence claim. This Court declines the invitation to overturn a half-century of Supreme Court jurisprudence. Plaintiff's third and fourth claims fail as a matter of law as mere negligence cannot support such claims when a matter of public interest is at stake.

For the foregoing reasons, this Magistrate Judge respectfully recommends that the motion to dismiss be GRANTED in part as to claims three and four and DENIED in part as to claims one and two.

Dated at Grand Junction, Colorado this May 20, 2019.

_____

Gordon P. Gallagher

United States Magistrate Judge