IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 18-cv-02934-CMA-STV

CAROLYN ANDERSON,

    Plaintiff,

v.

COLORADO MOUNTAIN NEWS MEDIA, CO. and
RANDY WYRICK,

    Defendants.

___

**ORDER ADOPTING AND AFFIRMING RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**
___

This matter is before the Court on the Recommendation (Doc. # 45) by Magistrate Judge Gordon P. Gallagher wherein he recommends that this Court grant in part and deny in part Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 34). On June 5, 2019, Plaintiff Carolyn Anderson and Defendants Colorado Mountain News Media and Randy Wyrick filed Objections to the Recommendation. (Doc. ## 47, 48.) Both Objections have been fully briefed. (Doc. ## 49, 50, 53.) For the following reasons, the Court adopts and affirms the Recommendation.

    I.    **BACKGROUND**

The magistrate judge's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28

U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address the Parties' Objections.

On November 16, 2017, Vail Daily published an article ("the Article") written by Defendant Wyrick, which described a fraudulent scheme that had been orchestrated by Plaintiff's late husband. The Article created the impression that Plaintiff was materially involved in the scheme through the following statements:

- "Vail widow sued for scam"

- "Securities and Exchange Commission lawsuit claims **woman and now-deceased husband** defrauded investors of $5.3M"

- "Vail widow **accused of securities fraud**"

- "A federal financial watchdog is suing the widow of a former Vail resident, **saying she was part of** her deceased husband's ponzi scheme."

- "The [SEC] sued [Plaintiff] . . . claiming that **she and husband** Michael Anderson scammed 18 investors out of more than $5.3 million . . . ."

- "SEC attorney Leslie Hughes is **charging [Plaintiff] with securities fraud** . . . ."

(Doc. # 1-1 at 2) (emphasis added).[1]

The Article was based, in large part, on a complaint that the SEC filed ("the SEC Complaint") in this district on November 8, 2017. *See Sec. and Exch. Comm'n v. End of the Rainbow Partners, L.L.C.*, No. 17-cv-02670-MSK-NYW (Doc. # 1) (original complaint); (Doc. # 34-3) (copy of complaint filed as Exhibit 2 to Defendants' Motion to Dismiss). The named defendants in the SEC Complaint were The End of the Rainbow

---

[1] The list of quotations from the Article is illustrative of statements that created the impression that Plaintiff was materially involved in the scheme; it is not necessarily exhaustive.

Partners, L.L.C. and The Estate of Michael F. Anderson. Plaintiff was included as a relief defendant in her individual capacity as well as her capacity as the personal representative of the Estate of Michael F. Anderson, and as trustee for the Michael Anderson Trust.

The SEC Complaint explained that the **named defendants** allegedly "violated the anti-fraud provisions of the federal securities laws." (Doc. # 34-3 at 4.) By contrast, the SEC Complaint explained that the **relief defendants** allegedly "received investors' funds misappropriated by Mr. Anderson, and were unjustly enriched because they provided no or negligible bona fide services or consideration in exchange for the funds received." (*Id*.) The SEC Complaint did not allege that Plaintiff was part of the fraudulent scheme at issue or that she violated the federal securities laws. Rather, the SEC Complaint portrays Plaintiff as—at best—an unwitting recipient of the fruits of the scheme, as evidenced by the following statements:

- Mr. Anderson executed electronic inter-bank transfers by electronically logging in under [Plaintiff's] user credentials, **without her knowledge or consent**.

- [Mr. Anderson] directed [Plaintiff] to sign blank checks on behalf of Rainbow Partners, and then he subsequently completed the payment information on the Rainbow Partners' checks.

- [Mr. Anderson] also forged [Plaintiff's] signature on brokerage account documents.

- Mr. Anderson **caused** [Plaintiff] to create the Rainbow Foundation, which **he used** as a fraudulent device to misappropriate investors' funds through the guise of contributions to a charitable organization.

- Mr. Anderson **caused** [Plaintiff] to create Seaoma, which **he used** as a fraudulent device to misappropriate investors' funds through the guise of paying Seaoma for purported services.

3

(*Id*. at 8–9, 13–14) (emphasis added).

The differences between the Article and the SEC Complaint gave rise to the instant case. Plaintiff's Amended Complaint raises four claims against Defendants:

- **Claim 1** – defamation;
- **Claim 2** – defamation for republished statements;
- **Claim 3** – negligent defamation; and
- **Claim 4** – negligent infliction of emotional distress.

(Doc. # 30.) On March 21, 2019, Defendants filed a Motion to Dismiss all of Plaintiff's claims. (Doc. # 34.) This Court referred the Motion to Magistrate Judge Gallagher, who issued a Recommendation which concluded that Defendants' Motion to Dismiss should be granted as to Claims 3 and 4 but denied as to Claims 1 and 2. (Doc. # 45 at 1–2.)

## II.   LEGAL STANDARDS

### A.   REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## B. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## III. DISCUSSION

Defendants object to the magistrate judge's determination that their Motion to Dismiss should be denied in part as to Plaintiff's defamation claims (Claims 1 and 2). Plaintiff, on the other hand, objects to the magistrate judge's determination that the Article involves a matter of public concern. Plaintiff also argues that the Motion should be denied as to her common law claims (Claims 3 and 4). The Court will consider Plaintiff's defamation claims and whether those claims involve a matter of public concern before turning to Plaintiff's common law claims. The applicable standard of review is *de novo*.

### A. PLAINTIFF'S DEFAMATION CLAIMS

Plaintiff argues that the Article relates to a private matter rather than a matter of public concern. Defendants, by contrast, argue that the Article does pertain to a matter of public concern, but the magistrate judge erred by not concluding that the Article is

6

substantially true. The Court finds that Magistrate Judge Gallagher properly determined that the Article relates to a matter of public concern, and he properly determined that the Article is not substantially true.

1. <u>Whether the Article Involves a Matter of Public Concern</u>

If an allegedly defamatory statement pertains to a matter of public concern, "the defamed party is subject to heightened burdens of proof." *Lawson v. Stow*, 2014 COA 26, ¶ 18. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Butler v. Bd. of Cty. Comm'rs for San Miguel Cty.*, 920 F.3d 651, 655–56 (10th Cir. 2019) (quoting *Lane v. Franks*, 573 U.S. 228, 241 (2014)); *see also Bailey v. Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1181 (10th Cir. 2018) ("Matters of public concern are issues of interest to the community, whether for social, political, or other reasons." (internal quotation marks omitted)). "The inquiry turns on the content, form, and context of the speech." *Lane*, 573 U.S. at 241.

Notably, "[t]he commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public . . . ." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975); *see, e.g., Shoen v. Shoen*, 2012 COA 207, ¶ 25 (statements made during a television interview implicating an individual in a highly publicized murder investigation related to a matter of public concern); *Lawson*, 2014 COA at ¶ 23 (statements conveying allegation

7

of child abuse related to a matter of public concern due to strong public interest in encouraging reporting of child abuse).[2]

The Court finds that the Article relates to a matter of public concern. The SEC Complaint disclosed facts pertaining to a fraudulent scheme that Plaintiff's husband executed in Vail, Colorado, which is a matter directly impacting the public. Moreover, although the SEC Complaint did not accuse Plaintiff of any wrongdoing, Plaintiff's involvement with the case is a subject of legitimate news interest.

The SEC Complaint indicated that Plaintiff's husband, *inter alia*, forged her signature on financial documents in furtherance of his scheme and caused her to create entities that he used to perpetrate fraudulent acts. Therefore, the details of Plaintiff's role in the story portrayed by the SEC Complaint is "a subject of general interest and of value and concern to the public," *Lane*, 573 U.S. at 241, even if the facts relevant to Plaintiff's role are limited to the extent to which her husband manipulated her in order to execute his fraudulent scheme. As a consequence, the following heightened burdens of proof apply to Plaintiff's defamation claims:

> **(1)** the defamed party must prove the falsity of the statement by clear and convincing evidence, rather than by a mere preponderance; **(2)** the defamed party must prove that the speaker published the statement with actual malice—that is, with actual knowledge that the statement was false or with reckless disregard for whether the statement was true; and **(3)** the defamed party must establish actual damages to maintain the action, even if the statement is defamatory per se.

---

[2] The Court notes that the SEC Complaint was filed in a civil, rather than criminal, case. Nevertheless, because the fraudulent conduct that the SEC Complaint described could have supported criminal charges, the Court finds that it is reasonable to characterize that case a judicial proceeding that is related to a crime for purposes of analyzing whether the matter pertains to a public concern.

*Lawson*, 2014 COA at ¶ 18 (emphasis added) (citations omitted). The facts alleged in Plaintiff's Amended Complaint establish each of the foregoing elements.

    2.    <u>Falsity of The Statements & Substantial Truth Defense</u>

        a.    *Legal standard*

"Where truth was once strictly a defense, now the plaintiff must shoulder the burden in his case-in-chief of proving the [material] falsity of a challenged statement if [she] is a public figure or the statement involves a matter of public concern." *Bustos v. A & E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011) (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986)). Additionally, substantial truth is an affirmative defense to a defamation claim. The defense relates to whether "the substance, the gist, the sting, of the matter is true." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1110 (10th Cir. 2017) (quoting *Gomba v. McLaughlin*, 504 P.2d 337, 338–39 (Colo. 1972)). Thus, to establish a prima facie case of defamation, Plaintiff must prove that the statements at issue were materially false, and Defendant may avoid liability by showing that the statements are substantially true.

Recognizing that there is a degree of overlap between a plaintiff's burden to establish falsity and a defendant's affirmative defense of substantial truth, the Tenth Circuit has explained:

> The distinction between material falsity and substantial truth affects the allocation of the burden of proof. Although defendants bear the burden of showing substantial truth to establish the affirmative defense, plaintiffs must prove material falsity as part of their case-in-chief, and in Colorado they must do so by clear and convincing evidence. This allocation may matter at trial, and at summary judgment.

*Id*. (internal citations omitted). However, in the context of 12(b)(6) analysis, "[t]he essence of [the] inquiry . . . remains the same whether the burden rests upon [the] plaintiff or defendant." *Id*. (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)). Accordingly, it "makes no difference whether [courts] address the issue . . . as whether the [statement] was materially false or substantially true." *Id*. at 1111 (citation omitted). In either case, the legal standards governing material falsity control. *See id*.

"To qualify as *material* the alleged misstatement must be likely to cause reasonable people to think 'significantly less favorably' about the plaintiff than they would if they knew the truth; a misstatement is not actionable if the comparative harm to the plaintiff's reputation is real but only modest." *Bustos*, 646 F.3d at 765 (citation omitted). Moreover, "'minor inaccuracies' do not count . . . ." *Brokers' Choice*, 861 F.3d at 1111 (citing *Masson*, 501 U.S. at 517).

      b.    Analysis

Defendants argue that the inaccuracies in the Article are not materially false because various investors initiated a civil case which alleged that Plaintiff was, in fact, materially involved her husband's fraudulent scheme. (Doc. # 47 at 6.) Defendants attempt to bolster their argument by pointing out that the attorney who initiated that case was formerly employed by the SEC. (*Id*. at 12.) In short, Defendants contend that reasonable people would not think significantly less favorably about Plaintiff if they knew that investors—as opposed to the SEC—alleged that Plaintiff violated the securities laws. The Court disagrees.

The Securities and Exchange Commission is a federal agency that has a unique history and mandate:

> When the stock market crashed in October 1929, public confidence in the markets plummeted. Investors large and small, as well as the banks who had loaned to them, lost great sums of money in the ensuing Great Depression. There was a consensus that for the economy to recover, the public's faith in the capital markets needed to be restored. Congress held hearings to identify the problems and search for solutions.
>
> Based on the findings in these hearings, Congress—during the peak year of the Depression—passed the Securities Act of 1933. This law, together with the Securities Exchange Act of 1934, which created the SEC, was designed to restore investor confidence in our capital markets by providing investors and the markets with more reliable information and clear rules of honest dealing.

<u>What We Do</u>, www.sec.gov/Article/whatwedo.html (last visited December 15, 2019). Therefore, actions that the SEC takes in furtherance of its mandate to enforce fairness in financial markets—such as initiating a case in federal court—are likely to carry a substantial amount of weight in terms of public opinion. Cases pursued by private investors, by contrast, are unlikely to carry the same weight because they are not perceived by the public as being sanctioned by the United States.

After reading the Article, a reader would conclude that the SEC was suing Plaintiff for securities fraud. That is false. Accordingly, reasonable people would think significantly less favorably about Plaintiff than they would if they knew the truth—i.e., that various private investors, rather than the SEC, were suing Plaintiff. *See Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 491–92 (1975) ("Great responsibility is . . . placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental

11

operations.") Moreover, incorrectly attributing allegations to a federal agency cannot be considered a "minor inaccuracy" due to the reputational consequences that are likely to result from that error. Therefore, the Article is materially false.

3. <u>Actual Malice</u>

In order to establish actual malice, a plaintiff must show by clear and convincing evidence that the defendant published the statement with knowledge of its falsity or in reckless disregard of the truth. *Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1041 (10th Cir. 2013) (citing *Lewis v. McGraw-Hill Broad. Co.*, 832 P.2d 1118, 1122–23 (Colo. App. 1992)). To show reckless disregard in particular, "the plaintiff must demonstrate that the defendant in fact entertained serious doubts as to the truth of the statement, or acted with a high degree of awareness of its probable falsity." *Id*. (quoting *Lewis*, 832 P.2d at 1123). "That a reasonably prudent person would not have published the defamatory statements or would have investigated before publishing does not suffice." *Id*. (quoting *Lewis*, 832 P.2d at 1123).

In the instant case, the facts alleged in Plaintiff's Amended Complaint are sufficient to establish actual malice. As Plaintiff accurately states, the Article is "disproved by the very documents upon which the publication was based . . . ." (Doc. # 30 at 6.) The Article reflects a substantial degree of familiarity with the SEC Complaint, which is evidenced by its accurate recitation of the amount of money Plaintiff's husband allegedly misappropriated and the name of the attorney who filed the SEC Complaint.

Consequently, it is plausible to infer that Defendants were aware that the SEC Complaint unambiguously **alleged that Plaintiff's husband and End of the Rainbow**

**Partners** violated the anti-fraud provisions of the federal securities laws. Similarly, it is plausible to infer that Defendants were aware that the SEC Complaint **did not allege that Plaintiff** violated the securities laws, and that she was merely a relief defendant. Therefore, Defendants published the statements at issue with a high degree of awareness of their probable falsity.

4. Damages

"Plaintiffs asserting a defamation claim under Colorado law regarding a matter of public concern must prove 'actual damage' when the publication is libel per se—libelous on the publication's face—and 'special damages' when it is libel per quod—libelous based on extrinsic facts." *Brokers' Choice*, 861 F.3d at 1109 n.32 (citing Colo. Jury Instr., Civil 22:1 (Apr. 2016); *id.* at 22:2; *Keohane v. Stewart*, 882 P.2d 1293, 1304 (Colo. 1994) (per se); *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) (per quod)). Therefore, the Court must determine whether Plaintiffs' defamation claims are libel per se or libel per quod before the Court decides whether Plaintiff has met her burden with respect to damages.

   a. The Article is defamation per se

Plaintiff's defamation claims are properly categorized as libel per se. "A statement imputing a criminal offense is defamatory per se." *Tonnessen v. Denver Pub. Co.*, 5 P.3d 959, 963 (Colo. App. 2000) (citing *Arrington v. Palmer*, 971 P.2d 669, 671 (Colo. App. 1998)). The Article indicates, for example, that the SEC maintained[3] that

---

[3] The Court is not persuaded by Defendants' argument that the Article does not constitute libel per se because it "states only that the Plaintiff has been accused of securities fraud in a civil lawsuit, not that she actually committed it." (Doc. # 47.) Defendants do not support their

"[Plaintiff] and husband Michael Anderson scammed 18 investors out of more than $5.3 million . . . ." (Doc. # 1-1 at 2.) It is well established that fraudulent acts may result in criminal liability pursuant to state and federal law. *See, e.g.*, *United States v. O'Hagan*, 521 U.S. 642, 654 (1997) (federal); *People v. Mendenhall*, 2015 COA 107M, ¶ 2 (state). Therefore, Plaintiff must establish actual as opposed to special damages.

    b.  *Plaintiff has established actual damages*

"'[A]ctual injury' includes 'impairment of reputation' and 'personal humiliation, and mental anguish and suffering' in addition to 'out-of-pocket' loss." *Brokers' Choice*, 861 F.3d at 1109 n.32 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50 (1974)). Plaintiff's Amended Complaint adequately alleges actual damages. Specifically, Plaintiff alleges that she suffered emotional as well as reputational harm due to the Article's publication. (Doc. # 30 at 7–9.) Plaintiff substantiates her allegations by noting that the Article disclosed the town in Florida where Plaintiff had purchased a home. Soon after the Article was published, an individual mailed a notice to Plaintiff's neighbors in Florida. The notice included **a copy of the Article** as well as the following statements:

> Attention Ponte Vedra Residents . . . Beware of your new neighbor . . . Last May, [Plaintiff] relocated to your neighborhood (18 Lighthouse Point Circle) after fleeing Vail, Colorado where, over five years, she and her husband defrauded investors of $5.3 million dollars. . . . [Plaintiff] is a compulsive liar, thief[,] and skilled con artist. Do not trust [Plaintiff] or anyone associated with her.

---

argument with any controlling authority. Moreover, the extension of the argument would lead to the counterintuitive conclusion that a statement is not defamation per se if the publisher frames the statement as an allegation from a third party.

(*Id*. at 17–18) (alteration in original). Thus, Plaintiff has alleged facts which plausibly establish actual damage to Plaintiff's reputation as well as the basis for emotional harm.

In summary, Plaintiff's defamation claims pertain to a matter of public concern, which subjects her claims to a heightened burden of proof. Plaintiff has met her burden for purposes of a 12(b)(6) motion because her Amended Complaint clearly and convincingly establishes material falsity, actual malice, and actual damages.

**B.     PLAINTIFF'S COMMON LAW CLAIMS**

Magistrate Judge Gallagher determined that Plaintiff's claims for negligent defamation and negligent infliction of emotional distress should be dismissed as a matter of law. Specifically, the magistrate judge found that because the Article pertains to a matter of public concern, "mere negligence is insufficient to support [Claims 3 and 4] . . . ." (Doc. # 45 at 19) (citing *Williams v. Cont'l Airlines, Inc.*, 942 P.2d 10, 16 (Colo. App. 1996)). Plaintiff "conced[es] that the Magistrate Judge followed appropriate precedent, [but] objects to the decision to dismiss [Claims 3 and 4] for the sole purpose to preserve this issue for appeal." (Doc. # 48 at 5.)

Because the Article pertains to a matter of public concern, Plaintiff cannot maintain a negligence-based theory on her state tort claims. *Lewis*, 832 P.2d at 1124–25 (First Amendment limitations on defamation claims "apply equally to ancillary tort claims which might arise from the publication of an allegedly defamatory statement"); *Fry v. Lee*, 2013 COA 100, ¶ 62 (same). As such, Plaintiff's negligent defamation claim is dismissed with prejudice because this Court's determination that the Article relates to a matter of public concern renders amendment futile. *Brule v. Blue Cross & Blue Shield*

of N.M., 455 F. App'x 836, 841 (10th Cir. 2011) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.")).

With respect to her infliction of emotional distress claim, however, the Supreme Court has held that when an allegedly defamatory publication pertains to a matter of public concern, a plaintiff "may not recover for the tort of intentional infliction of emotional distress . . . **without showing in addition** that the publication contains a false statement of fact which was made with 'actual malice' . . . ." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988) (emphasis added). Therefore, although Plaintiff cannot sustain a negligent infliction of emotional distress claim under these facts, it is possible that Plaintiff could adequately allege an intentional infliction of emotional distress claim. As such, Plaintiff's negligent infliction of emotional distress claim is dismissed without prejudice.

## IV.   CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

- Magistrate Judge Gallagher's Recommendation (Doc. # 45) is AFFIRMED AND ADOPTED as an order of this Court;
- Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 34) is GRANTED IN PART AND DENIED IN PART. Specifically, the Motion is **denied** as to Plaintiff's defamation claims (Claims 1 and 2), and the Motion is **granted** as to Plaintiff's common law claims (Claims 3 and 4);

- Plaintiff's negligent defamation claim (Claim 3) is DISMISSED WITH PREJUDICE, and Plaintiff's negligent infliction of emotional distress claim (Claim 4) is DISMISSED WITHOUT PREJUDICE for the reasons the Court stated in Section III(B);
- If Plaintiff seeks to add an intentional infliction of emotional distress claim, she shall file an amended complaint setting forth that claim on or before **January 17, 2020**. If Plaintiff fails to do so, Claim 4 will be dismissed with prejudice.

DATED: December 18, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge